on behalf of Michael Roberts. You have to reset the clock. Again, Mr. Roberts' case, as a legal matter, is going to match Mr. Bathia's case almost exactly. Mr. Roberts answered the call of duty on the morning of September 11th. He was employed by New York Presbyterian Hospital. The relationship between the hospital and the city of New York, the contractual provisions were almost exactly the same as would apply. Basically, both men suffered catastrophic injuries as a result of their service on that date. A lot of the same factors would apply. What's the difference? What are the differences? From a legal point of view, virtually none. There are a number of differences from the victim compensation fund. There was a difference of about $200,000 between the two cases. I'm not sure how they came up with those numbers or what they based those numbers on. Basically, both men are in the same position as a result of what happened to them on September 11th. This court in Aqua Products began looking more closely at the applicability of the Chevron Doctrine. As you're aware, this court had a plurality decision in Aqua Products where we had five different opinions that were generated as a result of that. The language that I believe applies here that was in the plurality holding is that an agency has no power to tailor legislation to suit bureaucratic goals. I believe that's basically what happened here. The 2006 regulation that again came five years after the fact basically narrowed the term public safety officer and the term official capacity far narrower than Congress had intended when they adopted that act. The other problem that I believe the agency faces here is that in Aqua Products, this court said, to be entitled to Chevron deference, an agency must cogently explain why it has exercised its discretion in a given manner. From what I've been able to see, what the agency has basically said in the past is, Groff, Moore, Chasson, these cases said it was okay for us to do this and we have done it and that's it. There's never been an explanation as to why they made that distinction, why they're only counting people serving public agencies who are, in the language of the 2006 regulation, authorized, recognized, designates, make them functionally a part of the agency, cover them for any legal liability. This was an extremely, extremely narrow definition which virtually changes the meaning of a statute. I don't remember, I'm sorry if I should, when the regulations were promulgated, what if any explanation for some of these choices was there in the federal register? I didn't see anything. They basically said, this is what we have done. The federal circuit has approved this approach. In the Groff case, I think they were citing Chasson. Of course, Chasson dealt with a prison inmate. You could understand why we wouldn't include that. These regulations predate 2001. Actually, the regulations came in 2006. Under the Dale Long Act that was enacted in 2013, there was a specific provision that gave the agency the right to make retroactive regulations. We have an unusual situation here where the act as it existed in 2001, the 2001 statute applies, but we have to use the current regulatory application. Again, I believe the definition that the court approved in Groff, it may have been applicable in Groff. It might not have narrowed it too much, but I believe it narrowed it much too much for the sort of situation we have today. I guess what I was mistakenly conflating, the 1981 legal interpretations opinion, which I think is what we deferred to in Groff. Yes, and that ended up later in the regulation. How does that differ from the regulatory language? It's basically the same. What I'm saying here is that even in the 1981 publication, which was not a regulation, but was a regulatory interpretation by the agency, they never actually came out and explained why they made that particular choice. They didn't give a cogent explanation, at least I didn't find one. I think at this stage, especially with the language in aquaproducts, I think the agency basically has to give a cogent explanation as to why they have narrowed this so closely. This definition basically wipes out anybody. As a practice, the agency is giving volunteer fire companies coverage under this definition. Even then, if you looked at it closely, they're not required to do that. They've created a definition which goes far beyond what the statute had intended. The distinction may be, and this is pure speculation on my part, that the concern was that as a general rule, ambulance drivers and firefighters might be responding in different ways to different activities. That's pure speculation. I don't know. It's hard to know. The Dale Long Act basically now covers ambulance crews that are not part of the government agency, because so many ambulance crews in rural areas are organized as non-profit corporations. The only reason that our gentlemen aren't covered under that is that they put a provision in that act that says, well, this only dates back to 2009. Congress more or less arbitrarily chose 2009 as the date to look back on. Does that congressional choice play a kind of ratification role? I don't think it does. I think why they made that choice, who knows. There's line drawing of all sorts for all kinds of compromises. When I argued at the agency level, I was saying they should apply that definition and ignore the 2009, which they chose not to do. Which is why I'm now arguing that if we actually look at the language of the 2000, the act that was in effect on September 11, 2001, that that would cover basically all of the ambulance crews that were on that scene taking orders from the New York Fire Department. If you want to reserve the rest of your time, let me just say, as a personal matter, everybody was covered in gray and there wasn't any physical distinction. That has nothing to do with the law or how we're going to decide this case, but just from a person observing it, everybody was serving that day. Thank you, Ron. Ron, do you have anything to add on this one? Very short points, Ron. Sure. First of all, McAuley questions the definition of instrument. I'll start by saying we agree that these cases are virtually identical. I'll just touch quickly on some of the points raised. Louder. I'm sorry. I'll just touch quickly on some of the points raised. The cases are virtually identical. Aquaproducts does not affect the outcome of this case. My colleague questions the definition of instrumentality, says it's never been explained. We set forth the definition, at least that's the argument as they raised it in their reply brief. We provided the Federal Register discussion of the agency's reasons for defining instrumentality as it does. That's at page 18 of our brief, the red brief. The purpose of the definition was that both individuals and entities must be accepted as part of a public agency for purposes of the Act's applicability. So there has been a rational explanation. And the final point, if I may, to touch on the applicability of the 2017 law, which my colleague brought up in relation to the Bethea case. Section 6 of that law, Public Law 115-36, states that the Act applies only to claims that were pending with the Bureau of Justice Assistance on the date of enactment. The date of enactment was June 2, 2017. Both Mr. Bethea's and Mr. Roberts' claim here have been resolved by the Director of the Bureau of Justice Assistance by that date. So they were no longer pending, and the 2017 Act does not apply. But that Act would apply if they were remanded? No, because, well, Section B, yes. Part 2 of Section 6 of that Act states that it applies to benefit claims received by the Bureau on or after the date of enactment of that Act. I don't know whether a remand would qualify as a claim being received. I'm sure they would make that argument, but I can't say. Mr. McGonigal? Just one last point, Your Honor. As you know, the Supreme Court dealt with the question of Chevron deference again last week in the case of SAS Institute, and I believe the Court needs to examine that case. I think we have. I believe you have, yes, but apparently we're going to have to re-examine that case again. But I think the Court said some very important things in that case about the scope of Chevron deference at this time, and I would ask the Court to examine that case and apply it to Mr. Roberts' case as well. Thank you, Your Honor.